IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



| | | |
|---|---|---|
| JACOB CARROLL, <br> Institutional ID No. 1983256, <br> SID No. 7450744, <br><br> Plaintiff, <br><br> v. <br><br> FNU GARRETT, *et al.*, <br><br> Defendants. | §§§§§§§§§§§ | CIVIL ACTION NO. 5:19-CV-084-BQ |

## REPORT AND RECOMMENDATION AND ORDER OF TRANSFER

This case was transferred to the magistrate judge by order dated May 16, 2019. ECF No. 13. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that pro se Plaintiff Jacob Carroll's claim against Texas Department of Criminal Justice (TDCJ) Correctional Officers (C.O.s) Shelby Garrett, Jonathan Casillas,[1] and John Garcia for excessive use of force in violation of the Eighth Amendment survives preliminary screening. ECF No. 25. Consequently, the Court entered orders requiring Defendants to answer or otherwise plead to Carroll's claims. *Id.* Defendants filed their Answer on September 4, 2019. ECF No. 27. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answer, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

---

[1] Carroll names "FNU Casillias" as a Defendant. Compl. 3–4, ECF No. 1. TDCJ's records, however, show that Defendant's surname is "Casillas." The Court will therefore refer to Defendant by that name.

I. **<u>Discussion</u>**

The undersigned previously found that Carroll's claim for excessive force survives preliminary screening.[2] *See* Order to Answer 8–9, ECF No. 25. Carroll's use of force claim arises under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley*, 475 U.S. at 320–21). In *Hudson*, the Supreme Court emphasized that a plaintiff must establish both a subjective and objective component. Specifically, a plaintiff must demonstrate that (1) an official acted with a "sufficiently culpable state of mind" and (2) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7; *Baldwin v. Stadler*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

---

[2] The Court concluded that Carroll's claim against C.O.s Garrett, Casillas, and Garcia for deliberate indifference to serious medical needs failed to state a claim for relief and dismissed it through the same order. *See* ECF Nos. 25, 26.

Here, Carroll alleges that on May 5, 2017,[3] TDCJ John Montford Unit C.O.s Garrett, Casillas, and Garcia used excessive force against him. Compl. 3–4.[4] At the *Spears* hearing, Carroll conceded that as C.O. Garrett attempted to serve him dinner on May 5, he "jacked," or took control of, the food slot by sticking both arms up to his biceps into the slot because he wanted C.O. Garrett to provide him a mattress. Tr. 1:59:45–2:00:42, 2:01:44–2:02:10; *see* Compl. 6. Carroll further acknowledged that after sticking his arms into the slot, C.O. Garrett ordered him three times to remove his arms from the slot. Tr. 2:02:47–2:03:06. Carroll stated that he refused the verbal orders because C.O. Garrett would not give him a mattress or serve him dinner. Tr. 2:01:01; *see* Compl. 6.

Despite his admitted failure to comply, Carroll contends that Defendants' subsequent actions violated his constitutional rights. Specifically, Carroll states that C.O. Garrett called two other officers, C.O.s Casillas and Garcia, to assist in regaining control of the slot. Tr. 2:01:10–:14; Compl. 6. Carroll alleged at the *Spears* hearing that one of the officers stated, "Get back in the slot or we're gonna make you get in the slot";[5] Carroll again refused to remove his arms unless the officers provided him dinner and a mattress. Tr. 2:03:25–:56. In response, C.O.s Casillas and Garcia then allegedly grabbed Carroll's arms, trying to force them out of the slot.[6] Tr. 2:01:16–:25, 2:02:33–:39; Compl. 6. Carroll contends that as C.O.s Casillas and Garcia attempted to remove his arms from the food slot, C.O. Garrett slammed the slot door into his arms four times.

---

[3] In his Complaint and at the *Spears* hearing, Carroll stated that the incident occurred on May 5, 2017. Compl. 4. TDCJ's authenticated records, however, reflect a date of May 4, 2017. At this stage of the proceedings, the Court does not find that determining the exact date of the alleged incident is required for properly screening Carroll's claims.

[4] Page citations to Carroll's pleadings refer to the electronic page number assigned by the court's electronic filing system.

[5] The Court liberally construes this statement to mean the officer demanded Carroll voluntarily remove his arms from the food slot, or the officer would remove his arms by force.

[6] At the *Spears* hearing, Carroll stated that at no time were both of his hands and arms completely removed from the slot. Tr. 2:04:40–:49, 2:05:18–:41.

*See* Compl. 4, 6; Tr. 2:06:08–:32. Carroll claims that the first time, his left arm immediately turned "black." Tr. 2:04:31, 2:06:32; Compl. 6. On the fourth attempt, Carroll avers that his right-hand middle and ring fingers were caught in the slot door, amputating the tip of his ring finger and lacerating the tip of his middle finger.[7] Tr. 2:05:04–:41, 2:06:47–2:07:08.

Carroll asserts that he told Defendants he was injured, but they "were so in shock" they refused to report the incident and left the area. Tr. 2:08:30. Carroll testified that after approximately five to ten minutes, a sergeant (whom he does not name as a defendant) came to the area and upon observing Carroll's injuries, immediately reported the incident and obtained medical treatment for him. Tr. 2:09:00–:08. According to Carroll, a physician in the medical department stated that he was not equipped to address Carroll's injuries. Compl. 7. Montford Unit officials subsequently transported him to University Medical Center (UMC) in Lubbock, Texas, for treatment, but Carroll avers that doctors were unable to reattach his fingertip. *Id.* Hospital staff bandaged his wounds and prescribed a pain reliever and an antibiotic. Carroll seeks relief in the form of monetary damages "for [his] traumatization and all the agony and extreme pain [he] had to suffer . . . ." Compl. 4.

At this stage of the proceedings, Carroll's allegations, taken as true, state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Eighth Amendment against Defendants Garrett, Casillas, and Garcia. *See, e.g., Hudson v. McAnear*, C.A. No. C–09–327, 2011 WL 67199, at *9–10 (S.D. Tex. Jan. 10, 2011) (denying summary judgment in favor of prison guard on prisoner's excessive force claim in part because evidence did not resolve "whether the *degree* of force was appropriate under the circumstances" or if the defendant applied the force "with malicious or sadistic intent" (emphasis in original)); *Brown v. Larty*, Civil Action No.

---

[7] Carroll contends that he was attempting to remove his right arm from the slot at the moment the officers slammed it closed on his fingers "because [he] knew they were serious about injuring [him]." Tr. 2:05:48–:58.

6:09cv69, 2010 WL 4736917, at *4–5 (E.D. Tex. Nov. 16, 2010) (explaining that despite prisoner's failure to obey orders, fact issue remained with respect to whether the amount or type of force defendant used was proportional to the need, thus precluding summary judgment in favor of defendant); *see also Sallie v. Thiel*, 23 F. App'x 586, 589–90 (7th Cir. 2001) (reversing district court's grant of summary judgment in favor of defendant, concluding that a fact issue remained as to whether defendant maliciously and sadistically caused harm where prisoner alleged he cried out in pain before defendant completely closed the food slot and severed prisoner's finger).

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:19-CV-084-C.

## II.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September **25**, 2019

                                                                                                      *[signature]*
_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE